IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CLASSIC AIR CARE, LLC, dba CLASSIC AIR MEDICAL, | |
| Plaintiff, | ORDER AND MEMORANDUM DECISION |
| vs. | Case No. 2:20-cv-00506-TC |
| | Judge Tena Campbell |
| AETNA LIFE INSURANCE COMPANY; MOAB VALLY HEALTHCARE, INC., dba MOAB REGIONAL HOSPITAL: AETNA CHOICE POS II – 500 HEALTH AND WELFARE PLAN AND ITS SUCCESSORS AND ASSIGNEES | |
| Defendant. | |

Plaintiff Classic Air Care, LLC (Classic Air) brings this lawsuit against Defendants

Aetna Life Insurance Company (Aetna), and Moab Valley Healthcare, Inc. dba Moab Regional

Hospital: AETNA Choice POS II– 500 Health and Welfare Plan (Moab Hospital)[1] to recover the

cost of air ambulance services it provided to a Moab Hospital employee who was experiencing a

medical emergency. In its complaint, Classic Air raises seven causes of action against

Defendants: three claims under the Employee Retirement Income Security Act of 1974 (ERISA)

and four claims under state common law. Defendants now move to dismiss all seven claims

---

[1] Defendants say that the proper name of the second defendant is "Moab Valley Healthcare Inc. Employee Medical Benefits Plan." Defs.' Mot. to Dismiss at 1 (ECF No. 9). Because all facts in the complaint are taken as true for the purposes of this order, the court uses the name of the defendant as originally stated in the complaint.

pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss (ECF No. 9).[2] For the reasons described, Defendants' motion is granted in part and denied in part.

## FACTUAL ALLEGATIONS[3]

On October 17, 2018, a Moab Hospital employee (Patient) experienced a severe health emergency while at work. Moab Hospital called Classic Air and requested air ambulance services so that Patient could be treated at the University of Utah Hospital in Salt Lake City. Classic Air used a helicopter to airlift Patient from Moab to Salt Lake City. In doing so, Classic Air alleges it entered into a "one-time medical transportation services agreement" with Defendants, called the "Air Ambulance Contract." Compl. at ¶ 74 (ECF No. 2). The air ambulance services provided by Classic Air cost $89,725.

Moab Hospital has a medical benefits plan for its employees: Aetna Choice POS II – 500 Health and Welfare Plan (the Plan). The Plan is governed by ERISA. Moab Hospital is the plan administrator and Aetna provides third-party administrative services for the Plan on Moab Hospital's behalf. As an employee of Moab Hospital, Patient was a Plan participant and eligible for benefits under the Plan.

On the day Patient was airlifted by Classic Air, she signed a form that assigned her right to recover medical benefits under the Plan to Classic Air. But because Patient was experiencing a

---

[2] Defendants filed their motion to dismiss under seal based on their Health Insurance Portability and Accountability Act (HIPAA) obligation not to disclose Protected Health Information (PHI). See Defs.' Mot. For Leave to File Under Seal at 2–3 (ECF No. 8). PHI consists of identifying information (such as a plan member identification number) combined with information related to the provision of health care or payment. See id. at 2. Because this order does not contain identifying information for the non-party Patient, it is not issued under seal.

[3] All factual allegations are from Classic Air's complaint. The court accepts them as true for the purposes of this order. See Albers v. Bd. of Cty. Comm'rs of Jefferson Cty, 771 F.3d 697, 700 (10th Cir. 2014).

medical emergency, neither Patient nor Classic Air had the opportunity to consult the Plan

regarding the validity of such an assignment. The Plan reads:

> When you see a network provider, they will usually bill us directly. When you see an out-of-network provider, we may choose to pay you or to pay the provider directly. <u>Unless we have agreed to do so in writing and to the extent allowed by law, we will not accept an assignment to an out-of-network provider</u> or facility under this plan. This may include:
> - The benefits due
> - The right to receive payments or
> - Any claim you make for damages resulting from a breach, or alleged breach, of the terms of this plan.

Def.'s Mot. Ex. A, Ex. 1 at AETNA000074 (emphasis added).

A few weeks later on December 6, 2018, Classic Air submitted a bill for $89,725 to

Aetna to recover the cost of its air ambulance services (the Claim). Six days later, Classic Air

received a payment of $8,834.81 from Aetna—about 10% of the total Claim amount. Compl. at ¶

30.

Over the next two years, Classic Air continually sought payment from Aetna for the full

cost of the Claim. Classic Air received a variety of responses from Aetna during this period.

When Classic Air contacted Aetna on April 12, 2019, for a review of the Claim and the

remaining balance, Aetna told Classic Air that the Claim had been denied on February 12, 2019.

Classic Air alleges that it could not appeal Aetna's initial decision to deny the Claim because

Aetna refused to provide written confirmation explaining its denial.

On May 6, 2019, Classic Air asked Patient to submit the Claim directly to Aetna. Four

days later on May 10, Classic Air contacted Aetna about Patient's submission of the Claim.

Aetna informed Classic Air that it would not pay the full Claim because the Claim was already

processed and paid as an "in-network" claim. <u>Id.</u> at ¶ 37. Classic Air explained to Aetna that it is

"not contracted with Aetna and that the [C]laim should have been processed as an out-of-

network claim." <u>Id.</u> at ¶ 38. Aetna promised to re-process the claim correctly as out-of-network. But Classic Air did not hear anything from Aetna for several months.

On August 9, 2019, Classic Air called Aetna for an update. Aetna told Classic Air that it denied the Claim back on May 14, 2019, because the Claim was in-network and satisfied by the $8,834.81 payment. Aetna did not explain why it refused to process the Claim as an out-of-network claim. But by the end of the call, Aetna promised again that it would send the Claim for an internal review that would take place within 48 hours.

On August 14, 2019, Classic Air contacted Aetna after not hearing from Aetna. Aetna told Classic Air that it would not approve the Claim because Aetna had already paid Classic Air 125% of the Medicare rates, which it considered a fair payment. Aetna told Classic Air that it could appeal within 60 days. <u>Id.</u> at ¶¶ 43–44.

On September 4, 2019, Classic Air submitted an appeal to Aetna. On October 1, 2019, Classic Air received a letter from Aetna stating the Claim was originally denied in December of 2018,[4] and Classic Air's 180-day window to appeal had expired.

On November 7, 2019, Classic Air again appealed the Claim denial, this time using special forms at the suggestion of an Aetna representative. On February 24, 2020, Classic Air received a letter from Aetna stating that it had previously investigated the Claim and that its determination to deny the Claim was final.

---

[4] Paragraph 46 of Classic Air's Complaint states "On or about October 1, 2019, Classic Air received a letter from Aetna stating that the Claim was denied because the original decision on the Claim was made in <u>December of 2019</u>…" (emphasis added). The court assumes this is a typing error and that Classic Air meant to write "December of 2018."

Classic Air continued to call Aetna to try to resolve the Claim but was told that the Claim would not be reopened or re-processed. Classic Air now seeks $80,890.19 in damages for the remaining cost of the services given Patient. Id. at ¶ 55.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face." Slater v. A.G. Edwards & Sons, Inc., 719 F.3d 1190, 1196 (10th Cir. 2013) (internal punctuation omitted) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible when the complaint contains factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013). The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 700 (10th Cir. 2014). The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

## ANALYSIS

### I.    ERISA CLAIMS

ERISA was passed by Congress "to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." Massachusetts v. Morash, 490 U.S. 107, 113 (1989). The statute has reporting and disclosure obligations for employee benefit plans and imposes a fiduciary standard of care on

plan administrators. Id. Under ERISA's statutory standing provision, lawsuits to enforce the terms of the statute and to recover benefits wrongfully withheld can be brought in federal court. Id.

Classic Air brings three ERISA claims against Defendants: (1) recovery of benefits under 29 U.S.C. § 1132(a)(1)(B); (2) recovery of benefits under 29 U.S.C. § 1133; and (3) breach of fiduciary duty under 29 U.S.C. § 1132(a), §§ 1104–05, and § 1109. First, the court addresses whether Classic Air has standing to bring its ERISA claims. Standing depends on whether Classic Air received a valid assignment of benefits from Patient. Then the court discusses whether Classic Air's second and third causes of action are cognizable claims for relief under ERISA's statutory scheme.

### a. Classic Air has standing under ERISA.

29 U.S.C. § 1132(a)(1) grants statutory standing to certain persons who are participants or beneficiaries of plans governed by ERISA. The statute authorizes civil actions "by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).

Classic Air is not a participant or beneficiary of the Plan—it is well settled that health care and medical service providers are not "beneficiaries" within the meaning of ERISA's enforcement provisions. Mem'l Health Sys. v. Aetna Health, Inc., 730 F. Supp. 2d 1289, 1294 (D. Colo. 2010) (citing Borrero v. United Healthcare of New York, Inc., 610 F.3d 1296, 1301–02 (11th Cir. 2010)). Consequently, Classic Air can only bring its ERISA claims under § 1132(a)(1)(B) if it received a valid assignment of Plan benefits from Patient. See St. Francis

Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kansas, Inc., 49 F.3d 1460, 1464 (10th Cir. 1995).

Defendants argue the Plan contains an anti-assignment provision that invalidates Patient's assignment of benefits to Classic Air. Classic Air raises three counter arguments: First, the anti-assignment provision is merely a "internal-process provision" that does not prohibit assignments. Pl.'s Opp'n Br. at 3. (ECF No. 16). Second, even if the anti-assignment provision was enforceable, Aetna waived the provision when it decided to process and make payments on the Claim. Third, the anti-assignment provision is invalid because public policy should always allow benefits to be assigned to service providers in emergency situations. For the reasons below, the court finds that Classic Air has standing because it is plausible that Aetna waived the Plan's anti-assignment provision.

### i. The Plan's anti-assignment provision is unambiguous.

In general, benefits under ERISA-governed plans are freely assignable. St. Francis, 49 F.3d at 1464 ("We interpret ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties"). But when a plan contains an unambiguous anti-assignment provision, assignments under that plan are invalid. Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1295 (11th Cir. 2004) (collecting cases); IHC Health Sys. v. Railserve Employee Benefits Plan, No. 2:06-CV-588 TS, 2007 WL 3069902, at *3 (D. Utah Oct. 19, 2007).

Classic Air says that here, the Plan's anti-assignment provision is actually an internal-process provision that, by its plain language, does not prohibit assignments. At the least, Classic Air argues that the provision is ambiguous and should be interpreted against Defendants as drafters of the Plan.

The court struggles to see how the sentence "unless we have agreed to do so in writing and to the extent allowed by law, we will not accept an assignment to an out-of-network provider or facility under this plan" is anything other than an anti-assignment provision. Of the many cases that interpret anti-assignment provisions, <u>McCulloch v. Orthopaedic Surgical Services</u> is especially persuasive. 857 F.3d 141, 147 (2nd Cir. 2017). The anti-assignment provision in <u>McCulloch</u> is nearly identical to the provision at issue here:

> Coverage may be assigned only with the written consent of Aetna. To the extent allowed by law, Aetna will not accept an assignment to an out-of-network provider, including but not limited to, an assignment of:
> • The benefits due under this contract;
> • The right to receive payments due under this contract; or
> • Any claim you make for damages resulting from a breach or alleged breach, of the terms of this contract.

857 F.3d at 144. The Second Circuit found that the above language unambiguously prohibited assignments and as a result, the plaintiff's acceptance of the assignment was "ineffective—a legal nullity." <u>Id</u>. at 147.

Similarly, here the Plan's anti-assignment provision unambiguously prohibits assignments unless Aetna has agreed to the assignment in writing. Because the Patient's assignment to Classic Air was not approved by Aetna in writing, it was prohibited by the plain language of the Plan.

### ii. Aetna waived the anti-assignment provision.

Classic Air argues that regardless of the anti-assignment provision's validity, Defendants waived the provision when they proceeded with their internal claim review process.

The Tenth Circuit has not yet defined what constitutes a waiver of an ERISA plan's anti-assignment provision. Court in other circuits have set forth varying tests. The Ninth Circuit recently held that to show waiver of an anti-assignment provision that would otherwise foreclose

8

a plaintiff from having statutory standing under ERISA, the plaintiff must allege that the plan administrator "was aware or should have been aware, during the administrative [claim] process that [the plaintiff] was acting as its patients' assignee." Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois, No. 19-55820, 2020 WL 7393554, at *4 (9th Cir. Dec. 17, 2020) (citing Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc., 770 F.3d 1282, 1297 (9th Cir. 2014)).

The Third Circuit has found that "a waiver requires a clear, unequivocal, and decisive act of the party with knowledge of such right and an evident purpose to surrender it . . . routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate an evident purpose to surrender an objection to a provider's standing in a federal lawsuit." Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 454 (3d Cir. 2018) (internal quotations and citations omitted).

In the Fifth Circuit, the test appears to be less demanding: The Court of Appeals affirmed a district court's finding that a plan administrator waived anti-assignment provisions when "it made payments to, and communicated with, [the plaintiff seeking recovery under ERISA] on at least some claims." Encompass Office Sols., Inc. v. Louisiana Health Serv. & Indem. Co., 919 F.3d 266, 281 (5th Cir.), cert. denied sub nom. Louisiana Health Serv. & Indem. Co. v. Encompass Office Sols., 140 S. Ct. 221 (2019).

At this stage, Classic Air need only set forth facts that allow the court to reasonably infer that Aetna waived the Plan's anti-assignment provision. When Aetna decided to process the Claim and to pay Classic Air directly in December of 2018, it gave Classic Air the impression that it did not intend to enforce the anti-assignment provision. Aetna proceeded to communicate with Classic Air for over two years, but it never attempted to invoke or give effect to the anti-

assignment clause. Instead, Aetna denied the insurance claim on several other grounds, including that Classic Air was "in-network," that Aetna's $8,834.81 payment satisfied Medicare rates, and that Classic Air had missed its deadline to appeal. Aetna promised to reprocess the Claim several times, indicating that this was more than just "routine processing of a claim." Am. Orthopedic & Sports Med., 890 F.3d at 454.

The facts also suggest that Aetna was aware that Classic Air was acting as Patient's assignee throughout the claim review process. After Classic Air first communicated with Aetna about the remaining balance of the Claim, it had Patient resubmit the claim directly to Aetna. After hearing from both Classic Air and Patient, Aetna knew or should have known that Classic Air was acting as Patient's assignee. Classic Air also told Aetna multiple times that it was an out-of-network provider, which shows that Aetna knew that Classic Air was seeking to recover benefits as an out-of-network assignee.

Defendants argue that, to the extent Classic Air maintains, "Aetna waived the provision by treating the claim as an in-network claim," Classic Air "cannot rebut its own allegations, that it was an out-of-network provider, in order to establish waiver." Defs.' Reply Br. at 5–6 (ECF No. 17). But the fact that Aetna may have mistakenly treated Classic Air's claim as in-network is not the only factual basis for the waiver; the court can infer waiver based on all of the communications and interactions between Classic Air and Aetna. Aetna paid Classic Air and then spent two years reviewing the Claim, communicating with Classic Air, and promising to reprocess the Claim correctly. These actions, viewed together, allow the court to infer that Aetna waived the anti-assignment provision.

Defendants also contend that simply because Aetna did not invoke the anti-assignment provision during the internal claim review process does not mean it waived the anti-assignment

provision as a litigation defense. In support, they cite to <u>Brand Tarzana Surgical Institute, Inc. v.</u>

<u>International Longshore and Warehouse Union-Pacific Maritime Ass'n Welfare Plan</u>, 706 Fed.

Appx. 442, 443–44 (9th Cir. 2017), in which the court held that an "anti-assignment provision . .

. is a litigation defense, not a substantive basis for claim denial."

But the Ninth Circuit recently clarified <u>Brand Tarzana</u>:

> That statement [in <u>Brand Tarzana</u>], however, does not undermine <i>Spinedex</i>'s holding that an insurer or claim administrator may waive the ability to raise an anti-assignment provision as a defense when they take action inconsistent with that provision or are aware that the claimant is acting as an assignee.

<u>Beverly Oaks</u>, 2020 WL 7393554, at *4. Aetna's actions were inconsistent with the Plan's anti-

assignment clause. Through multiple communications over a two-year period, Aetna led Classic

Air to believe that Classic Air had a right to Patient's benefits as an assignee.

For the stated reasons, it is plausible that Aetna waived the Plan's anti-assignment

provision. Classic Air has standing under ERISA.

### iii.   The anti-assignment provision is not invalid based on public policy.

Classic Air makes the novel argument that in emergency situations, anti-assignment

provisions are antithetical to ERISA and to public policy. Neither the Patient nor Classic Air had

the opportunity to consult the Plan for an anti-assignment provision before Classic Air

administered lifesaving care to the Patient. Classic Air asserts that if anti-assignment provisions

are upheld when it comes to emergency service providers, patients will be frequently denied

lifesaving flights or emergency service providers will be continually underpaid for their services.

Although Classic Air makes a good point, there is no case law to support its position. To

the contrary, courts have generally upheld parties' freedom of contract when it comes to anti-

assignment provisions. <u>See</u> <u>St. Francis</u>, 49 F.3d at 1464. Consequently, the court declines to set a

new rule that would invalidate anti-assignment provisions in emergency service situations.

**b. Classic Air's second cause of action for recovery of benefits under § 1133 fails as a matter of law.**

Having determined that Classic Air has standing, the court turns to Classic Air's claims for relief under ERISA.

In its second cause of action, Classic Air seeks recovery of benefits for Defendants' alleged violations of 29 U.S.C. § 1133. This section of ERISA outlines claims procedure, requiring that every employee benefit plan "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial . . . and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

Classic Air argues that Defendants violated § 1133 by failing to properly investigate, failing to give written notice of the specific reasons for denial of the Claim, and refusing to provide an opportunity for full and fair review of the decision.

Under ERISA's statutory scheme, § 1133 does not provide a separate enforcement mechanism. Rather, a plaintiff seeking to recover benefits based on a defendant's violation of the procedures laid out in § 1133 must do so by bringing a civil action under § 1132. See, e.g. E.W. v. Health Net Life Ins. Co., No. 2:19-CV-499-TC, 2020 WL 2543353, at *4 (D. Utah May 19, 2020) (reviewing a claim for recovery of benefits, brought under § 1132(a)(1)(B), for violations of § 1133).

The Supreme Court has denied a party's independent claim for relief under § 1133 and its corresponding regulations. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) ("The six carefully integrated civil enforcement provisions found in [§ 1132(a)] of the

statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly") (emphasis in original); see also <u>Walter v. Int'l Ass'n of Machinists Pension Fund</u>, 949 F.2d 310, 316 (10th Cir. 1991).

Classic Air cannot seek a remedy under § 1133 that is distinct from its first cause of action under § 1132(a)(1)(B). Accordingly, Classic Air's second cause of action fails as a matter of law.

### c. **Classic Air's third cause of action for breach of fiduciary duty also fails as a matter of law.**

Classic Air's third cause of action under ERISA is for breach of fiduciary duty in violation of 29 U.S.C. §§ 1104, 1105, and 1109.[5] Under § 1104, ERISA plan administrators owe certain fiduciary duties, including the responsible investment of fund assets, proper recordkeeping, and avoidance of conflicts of interest. § 1105 and § 1109 describe liability for breach of these duties and the duties of co-fiduciaries.

Classic Air alleges that Defendants, who owe fiduciary duties to Patient by virtue of their roles as plan administrators, breached those duties in several ways, including making misleading representations, failing to adequately investigate the Claim, refusing to consider all relevant medical and circumstantial evidence, and not giving an adequate explanation of why the Claim was denied.

Under ERISA, "a fiduciary who breaches his fiduciary duty is liable to the plan—not to the beneficiaries individually." <u>Walter</u>, 949 F.2d at 317. "§ 1132(a)(2) does not authorize a

---

[5] Classic Air correctly asserts this claim through §1132(a)'s enforcement provision. § 1132(a)(2) is the method by which a plan participant or beneficiary can seek relief for breach of fiduciary duty: "a civil action may be brought– (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).

participant or beneficiary to bring a private right of action for damages to redress a breach of fiduciary duty." Alexander v. Anheuser-Busch Cos., Inc., 990 F.2d 536, 540 (10th Cir. 1993). Rather, claim for breach of fiduciary duty must be brought on behalf of the plan and seek relief for the plan itself. K.H.B. by & through Kristopher D.B. v. UnitedHealthcare Ins. Co., No. 2.18-CV-000795-DN, 2019 WL 4736801, at *2 (D. Utah Sept. 27, 2019).

To sufficiently state a cause of action under § 1132(a)(2), a plaintiff must not only allege that the defendant breached its ERISA fiduciary duties, but also that the defendant's breach caused injury—monetary or otherwise—to the plan. Id. And the plaintiff must seek a remedy that is "recoverable only by or on behalf of the plan, not [the plaintiff] individually." Hart v. Grp. Short Term Disability Plan For Employees of Cap Gemini Ernst & Young, 338 F. Supp. 2d 1200, 1201 (D. Colo. 2004) (citing Walter, 949 F.2d at 317).

Classic Air's claim for breach of fiduciary duty under § 1132(a)(2) is only for its individual recovery of damages. Classic Air does not allege that Aetna's misleading statements or failure to investigate the Claim were directed at the Plan itself or at the Plan's beneficiaries as a group. Instead, the allegations are only about Classic Air's individual injury and recovery under the Plan. Classic Air's third claim for breach of fiduciary duty fails as a matter of law.

## II.     STATE LAW CAUSES OF ACTION

In addition to its three ERISA claims, Classic Air brings four state law causes of action against all Defendants: (4) breach of contract, (5) breach of the implied covenant of good faith and fair dealing, (6) unjust enrichment, and (7) promissory estoppel. Defendants move to dismiss all four claims, asserting that they are preempted by ERISA.

### a.  Classic Air's state law claims against Aetna are preempted by ERISA.

ERISA contains an express preemption provision: ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by ERISA]." 29 U.S.C. § 1144(a). The term "state law" includes all "laws, decisions, rules, regulations, or other State action having the effect of law." Id. § 1144(c)(1). A state law "relates to' an employee benefit plan "if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983); see also Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) ("A state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect"). The Tenth Circuit has held that "preemption applies to common law contract and tort claims if the factual basis of the cause of action involves an employee benefit plan." Kelso v. Gen. Am. Life Ins. Co., 967 F.2d 388, 390 (10th Cir. 1992).

Classic Air's only interactions with Aetna were "in connection with" the Plan, and the entire factual basis for Classic Air's state law claims against Aetna involves the Plan. As a result, Classic Air's state law claims against Aetna are expressly preempted by § 1144(a).

A state law claim can also be preempted if "an individual, at some point in time, could have brought his claim under [29 U.S.C. § 1132 (a)(1)(B)], and where there is no other independent legal duty that is implicated by a defendant's actions…" Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004). Classic Air has standing under § 1132(a)(1)(B) to bring its ERISA claims, and Classic Air does not allege that Aetna implicated any legal duties that were independent of the Plan. Accordingly, Classic Air's four state law claims against Aetna are completely preempted by ERISA and are dismissed.

**b. Classic Air fails to allege plausible state law claims against Moab Hospital.**

Classic Air asserts that its acceptance of Moab Hospital's request to airlift Patient created a quasi-contract—the Air Ambulance Contract—through which Classic Air "expected that Defendants would compensate it for its medical transportation services." Compl. at ¶ 78. Classic Air's breach of contract, breach of good faith and fair dealing, and unjust enrichment claims against Moab Hospital arise from this alleged quasi-contract. These three claims against Moab Hospital are not preempted by ERISA because they arise independently from the Air Ambulance Contract and are unrelated to the Plan. But because Classic Air's complaint does not contain sufficient facts to support the prima facie elements of these claims, they are dismissed without prejudice.

To create a contract, "the parties must have a meeting of the minds on the integral features of an agreement. This meeting of the minds requires agreement on the essential terms of the contract. So long as there is any uncertainty or indefiniteness, or future negotiations or considerations to be had between the parties, there is not a ... contract." Jones v. Mackey Price Thompson & Ostler, 355 P.3d 1000, 1009 (Utah 2015) (internal quotations and citations omitted).

Classic Air recites the conclusory statement that "the Air Ambulance Contract constitutes [sic] binding and enforceable contract between Classic Air and Defendants." Compl. at ¶ 76. But Classic Air's complaint makes no mention of the essential terms of the Air Ambulance Contract or that Moab Hospital assented to those essential terms. Classic Air's allegations, which are very sparse in regard to the breach of contract claim, do not allow the court to infer that there was a meeting of the minds.

In Utah, a claim for breach of the covenant of good faith and fair dealing is a derivative of a breach of contract claim. American West Bank Members L.C. v. State, 342 P.3d 224, 230–

16

31 (Utah 2014). When a party does not allege the existence of facts required to plead a breach of contract, it also fails to plead a breach of the covenant of good faith and fair dealing. Id. Because Classic Air does not allege sufficient facts for breach of contract, it also fails to plead breach of the covenant of good faith and fair dealing.

Classic Air also brings an unjust enrichment claim against Moab Hospital. "Contract implied in law, also termed quasi-contract or unjust enrichment, is a doctrine under which the law will imply a promise to pay for goods or services when there is neither an actual nor an implied contract between the parties. To prove the existence of a contract implied in law, the plaintiff must establish that the defendant (1) received a benefit, (2) appreciated or had knowledge of this benefit, and (3) retained the benefit under circumstances that would make it unjust for the defendant to do so." Express Recovery Servs. Inc. v. Reuling, 364 P.3d 766, 770 (Utah Ct. App. 2015) (internal citations and quotations omitted).

Classic Air does not adequately allege that Moab Hospital received a benefit, had knowledge of this benefit, or retained the benefit unjustly. If anything, it was Patient who received the benefit of the air ambulance services. Just because Moab Hospital called Classic Air to request an air ambulance does not allow the court to reasonably infer that Moab Hospital was unjustly enriched when Classic Air transported Patient.

Even though Classic Air has not stated sufficient contact claims against Moab Hospital, these three claims against Moab Hospital are dismissed without prejudice. The court will allow Classic Air the opportunity to clarify its contractual allegations in an amended complaint.

Finally, although Classic Air raises a promissory estoppel claim against Moab Hospital, it does not provide any allegations about how it reasonably relied on promises or representations

made by Moab Hospital. Rather, Classic Air's allegations only mention promises made by Aetna. Its promissory estoppel claim against Moab Hospital is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss (ECF No. 9). The court ORDERS as follows:

1. Plaintiff Classic Air's first claim against all Defendants for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) survives dismissal;

2. Classic Air's second claim against all Defendants for recovery of benefits under 29 U.S.C. § 1133 is dismissed with prejudice;

3. Classic Air's third claim against all Defendants for breach of fiduciary duty under 29 U.S.C. §§ 1132(a), 1104–05, and 1109 is dismissed with prejudice;

4. Classic Air's fourth, fifth, sixth, and seventh claims against Defendant Aetna for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel are dismissed with prejudice;

5. Classic Air's fourth, fifth, and sixth claims against Defendant Moab Hospital for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment are dismissed without prejudice; and

6. Classic Air's seventh claim against Defendant Moab Hospital for promissory estoppel is dismissed with prejudice.

DATED this 19th day of January, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge